Okay, Mr. Rizzo. Yeah, good morning, your honors. So we first want to talk about the issue in our matter about whether, as a matter of law, the three terminated contracts were requirements contracts or IDIQ contracts. And as you've read from the board's decision, the board gave two reasons why they believed that they were IDIQ contracts. The first being, rather remarkably, they found no language of exclusivity. And I think we all agree that for a requirements contract, the hallmark aspect is exclusivity of performance of a specific task by a specific contractor. So they found no language of exclusivity in the contracts. And then the second, the presence of IDIQ clauses and boilerplate IDIQ language was moving to the board, and we think both those reasons are wrong. Do you agree that under Provision H-2 that the government could have brought in another supplier for the geographic area assigned to SAGE? No. My response to that is H-2, first of all, it's an options clause. And under Federal Circuit case law, options clauses don't give any right to the government or the contractor until they're exercised? No, you're not answering my question. Okay. If they did exercise, do they have the right to exercise the provision to bring in another contractor for the same geographic area? Theoretically, if the government exercised that option, the purpose of that option being to reward exemplary performance by SAGE. To the contrary, if there was performance that... No, no, no, just answer my question. If the government... That's what the contract says. That's what the clause says. If they exercised the option in H-2, they could have brought in another contractor to perform in the same geographic area. Yes, sir. Okay. Okay. On H-2, what I'd also like you to keep in mind is the purpose. The purpose of H-2 underscores exclusivity. The purpose of H-2 says, this is a contractor that is performing one task in one area. If this contractor is exemplary, we will give that contractor additional area. So it underscores exclusivity. And the other thing about H-2 that we wanted to bring to your attention is, in addition to the option argument I make, H-2 to us is another example of just mistakes that the government made in the contract. H-2 references a number of IDIQ clauses, which we think are inappropriate in this requirements contract. And there are a litany of clauses that the government cites in this contract that are wholly inappropriate. And I want to make sure that we bring those to your attention so you're aware of them. So H-2, given the record on page 771, the government also includes a 52237-2 clause, which is the protection of government buildings, equipment, and vegetation. It's a clause that applies to performance on government installations. This was not performance on a government installation. And in fact, the contract makes clear at page 128 that the government is providing no facilities, no equipment, and no facilities. And no materials. So that's an errant clause. The government has clauses on notice of intent to disallow costs, which are also errant clauses in this fund-fixed-price contract. On page 774, the government has a termination for convenience clause, a termination for convenience of the government short-form clause and cost-reimbursement clause. The short-form clause in this contract is particularly troubling because the short-form clause is supposed to be used in situations where a contractor does not have major investments on its own nickel at the beginning of contract performance. And clearly, this was a contract where the government asked our client SAGE to invest in capital, to invest in offices, to invest in facilities, to invest in people at an extremely high level with the only ability to recover on that being from the less than 1% profit margin in the contract. On exclusivity, Your Honor, again, exclusivity is the hallmark of a requirements contract. We're not aware of any situation where the Federal Circuit has found exclusivity and ruled that the requirement, that the contract was IDIQ. And the Board made, we think, rather general and ineffective analysis of the contract clauses which apply, starting with 6.2.1.2 on page 733 of the appendix. That clause assigns to SAGE all unsold inventory in its awarded geographic area. The contractor shall also receive all case files for the unsold inventory. So when it comes on board, it gets all of the unsold inventory from the incumbent contractor. In addition to that, 6.2.1.1, on the 31st day, the contractor begins to receive all new acquisitions in accordance with the performance work and will continue to receive the new acquisitions. Counsel, is exclusivity basically an all or nothing proposition? Or can you have some statements about exclusivity without making a contract a per se requirements contract? We're not aware of a situation where that's happened, Your Honor. And I think it's particularly important in a case like this where during the solicitation phase, SAGE was told twice it would be the only contractor in these areas and that it would receive all the inventory. The contract underscores those two representations that were made in the solicitation. There's no contention that if there was an exclusivity right that it was breached. There's no contention that there was a breach of any exclusivity right. The contention is that the government mis-estimated its requirements. The contention is that this is a requirements contract. Answer my question. There's no contention that, assuming hypothetically that it was an exclusivity provision, that that was breached. There is no contention that the exclusivity is breached. The contention is that if this is a requirements contract, the liability of the government is not capped at the guaranteed minimum. Even though the contract says explicitly that it is. If it's a requirements contract, it can't be capped at the guaranteed minimum because then there's no consideration. The purpose of a requirements contract is the government agrees to give all of its requirements and the contractor agrees to perform all of its requirements. If either side of that is ineffective, then it's a contract that is unenforceable as illusory and that's a determination that the Federal Circuit is loathe to make, Your Honor. So what we are asking of you is a determination as a matter of law because of the exclusivity in this contract that this is a requirements contract. What that will do is return this matter to the Board where SAGE has a determination for convenient settlement proposal just to get even in its performance. It's asked for the $3.1 million to recover its costs plus profits on other issues as you are aware. What's your response on coal's pest control? How do you respond on that case? On the coal pest control case? Yes. So the coal pest control case is, I believe the language in coal pest control does not mandate exclusivity. The coal pest control has language that discusses on the properties that are assigned by the government agency and in our case, there's no such condition. There's no limitation. Our client is entitled to all of the properties. So that's our response to that case. And we cited a case which is Crown Laundry, a case from the Court of Federal Claims and the Crown Laundry case found notwithstanding the presence of IDIQ clauses that it was a requirements contract and the logic that the court used to get there was we need to analyze the situation, the totality of the situation. It's not binding on us. It is not binding although it relies very heavily on Federal Circuit cases to reach that decision, Your Honor. And I think it's the right analysis. The analysis is what does the totality of the contract say? We need to take into account the exclusivity promises. We need to take into account whether the government could have made a mistake on labeling it an IDIQ contract just like the other dozen or so mistakes it made in the contract clauses that it chose. So our position is if you analyze the contract as a whole, you will read exclusivity. And exclusivity being a hallmark of a requirements contract should lead you to conclude that this is a requirements contract which would keep Sage's claims alive, Your Honor. But if you construe it to not be an IDIQ contract, the provision limiting the government's liability doesn't mean anything, right? If it's a requirements contract, there's one provision in the contract that expressly limits the government's liability. That is NH2, Your Honor. And as I said before, the parties should not look at H2 as a matter of law unless and until that option is exercised, which didn't happen. But that being said, if this is a requirements contract, then the limitation that's in that provision does not apply. And if the court were interested in harmonizing the potential application of that provision in the event that the government did exercise the option, our argument on H2 is that the language about reaching the guaranteed minimum applies to the point in time when the government can decide to exercise its option to increase geographic area for exemplary performance or to decrease geographic area on the basis that the contractor isn't performing. So that clause, as part of the totality of the circumstances, as we believe, really does underscore exclusivity and adds to our argument that this is a requirements contract. I've saved three minutes for rebuttal, and I'll step down now unless there's any other questions. I have one more question before you sit down. On appendix page 733 that you took us to, there is that reference to 6.2.1.1.1. So three ones is what I was trying to say. Yes. I don't see the same sort of suggestions regarding exclusivity in here. What is your response, or do you feel like that does not matter in terms of your argument? Oh, it matters. 6.2.1.2 is the commitment that all of the incumbent contractors' old inventory will go to my client Sage. 6.2.1.2 is the statement that on the 31st day, the contractor Sage shall begin to perform marketing sales for all new acquisitions. So it ties together. Sage gets the old, and Sage gets the new. And if you look at the 1.1.1 that's below it on the third line, also Sage will continue to receive new acquisitions in this area following the 31st day. So there isn't a reasonable expectation in our view of anything other than exclusivity in that provision. Okay. We'll give you two minutes for rebuttal. Thank you. Okay. Okay. Top one. Government respectfully requests that you affirm the decision of the CBCA. The Board properly held that the contract was an IDIQ contract, such that Sage was not entitled to anything beyond the guaranteed minimum, which is undisputed that HUD satisfied. The Board also properly held that HUD's exercise of option year two was proper. And the Board as well as the Board properly held that HUD did not breach the bridge contract by diverting inventory or in essence just by using Brio alternatives. As I said, this contract is clearly an IDIQ contract, and the Board's holding on that was well-reasoned and proper. The plain language of this contract shows it is an IDIQ, and case law is clear. When a contract is clear and unambiguous, this court should go no further and look not beyond the plain language. There's a lot of indicia pointing us to why this should be understood as an IDIQ contract. But what was the government trying to accomplish with 6.2.1.1 and 6.2.2? The government was 6.1 point, you're correct, Your Honor, it was all the indicia of an IDIQ contract. But 6.2.1.1 and 6.2.1.2 solely deal with ramp up of the contract. They deal with what occurred in a specific period of time. They deal with what happened on the 31st day, what happened on the 61st day. But your problem is that in the Q&A, in connection with the solicitation, it was characterized as giving the contractor exclusive rights if it was the only contractor assigned to that area, which it was in this case. Right. Your Honor, but there's no requirement for the government to actually not go outside the IDIQ. This is an IDIQ. It's not a requirements contract. The government was free on this case. I don't think you're answering my question. Judge Chen made reference to these provisions of the contract, 6.2.1.1 and 6.2.1.2, as perhaps creating an exclusive right to that territory, absent the exercise of the option in H.2. And the government is saying, no, no, you shouldn't construe those clauses as giving an exclusive right. And the problem I'm having with that is the Q&A in connection with the solicitation, which seems to recognize that if there's only one contractor for the area, that's an exclusive contract. First off, the court looked at the language of the contract, not the Q&A. No, no, no, no, but certainly if we find that 6.2.1.1 and 6.2.1.2 are ambiguous, we can look to the Q&A, correct? Certainly, but 6.2.1.1… Well, let's assume for the moment that we find that they're ambiguous, okay? Doesn't the Q&A suggest that there's an exclusivity right here? The Q&A suggests, as I understand, Your Honor, a single award, single award IDIQ, which in this case is when you have a single award, that generally means that that one contractor gets that work for the specific area. But being that it's an IDIQ, there's no restriction, which would exist in the case of a requirements contract. There's no restriction on going outside the IDIQ. What it says is to the extent there's a single award IDIQ… I don't understand what you're saying. I mean, here's a Q&A which says if there's one contractor for the area, it's exclusive. And why can't I use that to interpret 6.2 as conferring exclusivity? Because a single award IDIQ is distinct from a requirements contract. The fact that there's only… That's assuming the result. Sir, with all due respect, Your Honor, the contract… First, let me look to the language of the contract. The contract states it's an IDIQ contract. It makes it very clear. It contains all the indications of a single award IDIQ contract. And the single award IDIQ contracts work in the sense how a single award is intended to work, is that there's one contractor assigned for that specific award area. But unlike a requirements contract, it does not guarantee exclusivity. It guarantees that if we choose to use that IDIQ, then we will use that single contractor. That is what is guaranteed here. That's what was intended and what was clear from the Q&A. And that's what is clear from the plain language of the contract. It was a single award. There's no requirement that HUD had to satisfy all of its requirements through this IDIQ. That would have existed had it been a requirements contract. But it's not. HUD was certainly free to go outside the IDIQ. They were certainly free. All they had to do was satisfy the guarantees. I guess the question comes back to how do we just understand the plain words and 1-1-1-2 and 1-1-1, where it suggests that, okay, SAGE is going to inherit everything. It's going to keep getting new things. And so, there's a suggestion, at least, that there could be exclusivity embedded inside these provisions. With all due respect, Your Honor, we would disagree. Those provisions do deal with a specific point in time. What exclusivity requires is a prospective promise throughout the life of the contract to give all work. All it suggests is on the 31st day they get the existing acquisitions and they get things transferred. All it suggests is they get stuff on the 61st day. It deals with nothing beyond those days. Let's assume for the moment you're wrong about that, okay? Let's assume that we read 6.2 as creating exclusivity, which can be undone by exercising the option in H2. Is this still an IDIQ contract? Yes, Your Honor. It's undisputedly an IDIQ contract. H2 talks about, if you interpreted this as a requirements contract, H2 would essentially defeat the consideration and render a requirements contract unenforceable. I guess I'm a little, let me try again with what I heard Judge Dyck ask. If there's an exclusivity provision in this contract, can an IDIQ contract have an exclusivity provision in it? And if the answer is no, that's fine, but I'd like to hear. IDIQ contract cannot have an exclusivity provision on it. An IDIQ contract allows the contractor, they can go outside the IDIQ, that if you had the exclusivity provision, exclusivity is a hallmark of a requirements contract. In this case, there is no exclusivity provision. Wait. Let's assume that 6.2 creates exclusivity, but H2 provides the government with an option to undo the exclusivity. Is that inconsistent with an IDIQ contract? No. That would be consistent with an IDIQ contract and it would be inconsistent with a requirements contract because in a requirements contract, the option to undo the exclusivity would render the consideration illusory. In the case of an IDIQ contract, this would be consistent with it because in the case H2 essentially says you can undo this as you satisfy the guaranteed minimum. An IDIQ's contract, the consideration for it is the guaranteed minimum. What H2 does is it says when the guaranteed minimum is satisfied, we can undo it. The contract is over, we've satisfied our obligations, and we are allowed to move on and increase or decrease the G gap and move away. So essentially H2 fully reinforces the contract status as an IDIQ, irrelevant of whether you would read exclusivity. One reasonable way of reading Section 6 is, yes, it's contemplating SAGE as being the sole contract, the sole source, but it doesn't actually provide exclusivity across the life of the contract. Yes, Your Honor. That's the position that we posit in our brief. That's the position we posit here today. It contemplates that SAGE will be the single award holder and they will receive the work, but it doesn't actually guarantee it. And H2 makes that clear that we have no further obligations to SAGE once the guaranteed minimum is satisfied. That's the hallmark of an IDIQ contract. The consideration for an IDIQ contract is the satisfaction of the guaranteed minimum. In this case, HUD satisfied the guaranteed minimum, and when that consideration was satisfied, HUD's obligations ended. But as I said, the plain language in this case is clear, and the court shouldn't attempt to read ambiguities where they don't exist. It identifies itself as an IDIQ. It has all the IDIQ's clauses, no requirements clauses, and it includes the guaranteed minimum, which is the hallmark of an IDIQ contract. As I said, the H2 is consistent with an IDIQ, but we're totally inconsistent with a requirements contract. Likewise, this contract has no indications of the requirements contract. It doesn't have the clauses. It doesn't have exclusivity for the prospective life of the contract, and it doesn't have guaranteed estimates. There's no indicea of an IDIQ contract. There's all the indicea here is that it's an IDIQ contract. There's no indicea of a requirements contract, and this court shouldn't attempt to allow SAGE to insert ambiguity where it clearly doesn't exist. This contract is clearly an IDIQ contract, and HUD satisfied the guaranteed minimum. It's undisputed. Therefore, SAGE is entitled to nothing further. They received the full benefit of the bargain. The bargain was you're going to get a million dollars of work under each contract, and they got that million dollars of work. It's undisputed. They received everything. They're just attempting to bootstrap on and get more because they were not as profitable as they wanted to be. In addition, just to address, as far as further questions on the first argument, just to address the other two arguments, the board's conclusion that HUD's exercise of Option Year 2 was not illegal, was proper, and as far as just like I said with respect to the guaranteed minimum, even if it wasn't proper, even if the court had no further obligation to SAGE after they satisfied the guaranteed minimum, it is undisputed that they did prior to Option Year 2, as well as the board properly held that HUD did not breach the bridge contract. The language of the contract is clear. It's limited to RIOs, foreclosure sales, and the bridge contract they did give them. It's also undisputed that they gave them all RIOs, and exclusivity for that bridge contract only existed for the services in the contract, which were RIO services. So HUD did not breach that contract by using services outside the RIO program as they were allowed to do. Unless this court has any further questions. Okay, thank you. Thank you, Your Honor. So back to H2. I just want to make it clear, H2 does not eliminate exclusivity. H2 may reduce the exclusivity of a geographic area, or it may increase it, but it doesn't do anything to add a second contractor. There's still exclusivity. You said to me in the opening argument that H2 did allow them to add a second contractor in the same geographic area. I realize that, and I'm clarifying that, Your Honor. Clarifying? You're trying to take it back. I made a misstatement to you earlier. So however you want to characterize it, H2 does not add a second contractor to an area. H2 either increases or decreases the geographic area. And to Ms. Toplin's argument about the impact of that potential option that exercises a reduction, the same impact occurs if the government terminates for convenience. And so if the conclusion is that the reduction impact makes a contract incapable of being a requirements contract, then no contract can be a requirements contract because every contract as a matter of law has a termination provision. Sorry, Your Honor. How do you respond to a follow-up on what Judge Chin asked opposing counsel in terms of no exclusivity over the life of the contract? It's just exclusivity over a certain time period. Do you have a response to that? The response is we don't agree. 6.2.1.2 on the 61st day assigns all the old inventory of the other contractor. 6.2.1 of the incumbent contractor. 6.2.1.1 assigns all new inventory on a going forward basis. So I don't know what else there is, what else there would be left, Your Honor. I apologize. Okay. I think we're out of time. I'll thank both counsel. The case is submitted. That concludes our session. Thank you.